```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BILLY J. POTTS, BRIAN CLARKE AND         :
ALBERTO FLORENTINO,                       :
                                          :
                Plaintiffs,               :         **MEMORANDUM & ORDER**
                                          :
        -against-                         :         17 Civ. 2386 (ARR) (VMS)
                                          :
POSTAL TRUCKING COMPANY AND CLIFTON       :
B. FINKLE,                                :
                                          :
                Defendants.               :
------------------------------------------------------------------X
```

**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court is Plaintiffs' motion for sanctions against Defendants pursuant to the Court's inherent power for allegedly intimidating, threatening and harassing behavior. For the reasons stated herein, the Court denies Plaintiff's motion.

**I.   FACTS RELATING TO SANCTIONS MOTION**

According to Plaintiffs' motion, ECF No. 25, Plaintiff Brian Clarke was called into an office with Jamie Finkle and Defendant Clifton Finkle, the principals of Defendant Postal Trucking Company on November 9, 2017. Plaintiff Billy Potts accompanied him to the meeting with the Messrs. Finkle but was denied entry into the office. Mr. Clarke entered the office, whereupon the door behind him was shut and locked. There was a handgun on the desk. Mr. Jamie Finkle sat across from Mr. Clarke, while Mr. Clifton Finkle stood next to Mr. Clarke. Although the Messrs. Finkle did not make any verbal threats or references to the handgun, Mr. Clarke felt that the presence of the gun on the table and Mr. Clifton Finkle's stance were meant to and did, threaten, frighten and intimidate him. Mr. Clarke was then fired. ECF No. 25.

At an emergency status conference, the Messrs. Finkle offered additional facts in response to Plaintiffs' recitation of the facts and claimed, inter alia, that while there was a gun on

1

the desk, it was a nonfunctional piece of family memorabilia that had always been on Jamie Finkle's desk, and his father's desk before his. As the parties' recitation of the facts appeared to vary in critical ways, the Court scheduled an evidentiary hearing. See Transcript, ECF No. 32 ("Tr.").

At the evidentiary hearing, Plaintiff Brian Clarke testified, inter alia, that he had never entered Jamie Finkle's office before, Tr. 13:15-23; that he did not know that there was always a gun on his desk or that it was not functional, Tr. 24:6-15; and that the presence of the gun scared him, Tr. 31:23-32:13. The Court found his testimony to be credible.

Plaintiff Billy Pott's testimony was similar to that of his co-Plaintiff Brian Clarke. Tr. 76:7-112:13. The Court found his testimony to be credible.

Jamie Finkle testified, inter alia, that the gun was non-functioning, Tr.177:8-9; that it had always been in plain sight on his desk at Postal Trucking Company's Newark, New Jersey offices, Tr.159:7-9; and that before that, it had been on his father's desk at the Company's Clifton, New Jersey location, Tr.159:12-15. The Court found his testimony to be credible.

Defendant Clifton Finkle's testimony was similar to that of his cousin, Jamie Finkle, Tr. 181:16-191:10. The Court found his testimony to be credible.

Defendants called two witnesses, Ms. Patricia Belloso and Mr. Glen Berry. The Court found their testimony to be credible.

Ms. Patricia Belloso, who is Jamie Finkle's assistant, testified, inter alia, that she has worked at the company for approximately ten years, Tr. 118:18; that she enters Jamie Finkle's office on a daily basis and that the gun is always on Jamie Finkle's desk, Tr. 124:15-19; and that she knows it to be not functional, Tr. 125:2-10.

Mr. Glen Berry, who is Postal Trucking's director of business development, Tr. 135:13,

testified, inter alia, that he has worked at the company continuously since 1987, Tr. 134:20-25; that he enters Jamie Finkle's office on a daily basis, Tr. 138:8-10; that the gun has always been on Jamie Finkle's desk, Tr. 138:19-139:5, and on his Jamie Finkle's father's desk before that, Tr. 139:11-13; and that he knows, Tr. 139:9, and it is widely known, to be not functional, Tr. 140:18.

After hearing the evidence, the Court finds that the gun had been on Jamie Finkle's desk for years and on his father's desk before that; that it was known to be not functional to the company employees who regularly spent time in Jamie Finkle's office, but that neither Plaintiff had ever seen the gun before nor did they know it to be not functional; and that Mr. Clarke was fearful because of the gun's presence. The Court does not find that Mr. Clifton Finkle's stance during the meeting was a cause for concern.

Having made its findings of fact based on the evidentiary hearing, the Court now turns to Plaintiffs' motion.

## II. SANTIONS MOTION

### A. Applicable Standard

It has been said that "determining whether a case or conduct falls beyond the pale is perhaps one of the most difficult and unenviable tasks for a court." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 341 (2d Cir. 1999). On view of the evidence before the Court, this is not such a case.

Sanctions may be authorized by several rules or statutory provisions, or may be permissible pursuant to the court's inherent power. "Because the various sources of the court's authority are governed by differing standards, . . . it is imperative that the court explain its sanctions order 'with care, specificity, and attention to the sources of its power.'" Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997) (quoting MacDraw, Inc. v. CIT Group Equip.

Financing, Inc., 73 F.3d 1253, 1262 (2d Cir. 1996), and citing In re Ames Dep't Stores, Inc., 76 F.3d 66, 70 (2d Cir. 1996)).

Plaintiffs suggest that the Court may use its inherent authority to sanction Defendants. As a basis for their sanctions motion, they cite Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co., No. 00 Civ. 5658 (JC), 2002 WL 1433717, at *4 (N.D. Ill. July 2, 2002) (interference with the attorney-client relationship is bad faith conduct warranting sanctions), and Carroll v. Jaques Admiralty Law Firm, P.C., 110 F.3d 290, 291 (5th Cir. 1997) (under the court's inherent power to regulate court proceedings, issuing sanctions against an attorney for using profanity during a deposition). Plaintiffs do not cite to any statutory authority or case law that authorizes the issuance of sanctions in a factual scenario similar to this one. As Plaintiffs have only moved for sanctions pursuant to the Court's inherent authority, the Court will limit its analysis in kind.

"Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees." Chambers v. NASCO, Inc., 501 U.S. 32, 42 (1991).

"A federal court has inherent authority to sanction a litigant for bad faith conduct. The inherent authority is 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Fid. Nat. Title Ins. Co. of N.Y. v. Intercounty Nat. Title Ins. Co., No. 00 Civ. 5658 (SBC), 2002 WL 1433717, at *4 (N.D. Ill. July 2, 2002) (quoting Chambers, 501 U.S. at 42). Sanctions such as shifting attorneys' fees and rendering judgment may be imposed under the

court's inherent authority. Chambers, 501 U.S. at 44-45; Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 964 (7th Cir. 1999) (inherent power 'permit[s] a court to impose the ultimate sanction of a grant of judgment'). "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." Shepherd v. American Broadcasting Companies, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (holding that sanctions under the court's inherent power can "include . . . drawing adverse evidentiary inferences"). For example, threats of violence or intimidation in connection with a lawsuit may call for the exercise of the Court's inherent powers. See, e.g., Porton v. SP One, Ltd, No. 6:15 Civ. 566 (PBG) (EAJ), 2015 WL 1648893, at *6 (M.D. Fla. Apr. 13, 2015) (where the court exercised its inherent powers in sanctioning Plaintiff with dismissal of the lawsuit for harassing and intimidating conduct toward Defendant and Defendant's counsel where Plaintiff left voice messages for Defendant suggesting that "he knew what church Ms. Dugas attended, he knew details about her family and daily activities, and he knew her personal address"; and sent a video to Defendant showing someone being shot; the Court noted that "Plaintiff's actions threaten the public's trust in our system of justice and disparage the core values for which it stands."); Carroll v. Jaques, 926 F. Supp. 1282, 1289 (E.D. Tex. 1996), aff'd sub nom. Carroll v. Jaques Admiralty Law Firm, P.C., 110 F.3d 290 (5th Cir. 1997) (where the court exercised its inherent powers in sanctioning the defendant with a fine for threatening the plaintiff's counsel with an act of physical violence during a deposition).

"Sanctions imposed pursuant the court's inherent authority are not" limited to the attorney; "they may be imposed against an attorney, a party, or both." Martin v. Giordano, 185 F. Supp. 3d 339, 353-54 (E.D.N.Y. May 9, 2016) (citing Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (describing this as "the only meaningful difference between an award made

5

under § 1927 and one made pursuant to the court's inherent power")).

One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129 (1974)). Sanctions imposed under a court's inherent power–commonly known as the bad faith exception to the "American Rule" against fee shifting–"depend[ ] not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." Chambers, 501 U.S. at 42.

Due to the "very potency" of a court's inherent power, it should be exercised "with restraint and discretion." Id. at 44. The Second Circuit, "in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power," United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991),

> We have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of [the] lower courts.

Oliveri, 803 F.2d at 1272 (quotation marks, brackets and citations omitted).

### B. Plaintiffs Failed To Meet Their Burden

Having reviewed the heard the testimony of the witnesses at the sanctions hearing and reviewed the parties' submissions, the Court finds that Plaintiffs have failed to prove by clear and convincing evidence that the presence of the gun on Jamie Finkle's desk fell so beyond the pale, Schlaifer Nance & Co., 194 F.3d at 341, or was bad faith conduct, Chambers, 501 U.S. at 42; or was taken for an improper purpose, harassment or delay, Oliveri, 803 F.2d at 1272.

6

Indeed, the evidence adduced at the hearing shows that the gun had been on Jamie Finkle's desk for years and on his father's desk before that and that it was known to be not functional to the company employees who regularly spent time in Jamie Finkle's office. The Court believes that Mr. Clarke, who spent little time at headquarters and rarely, if ever, entered Jamie Finkle's office, may not have known about the gun and was reasonably frightened by its presence. The Court nonetheless finds Plaintiffs have failed to show that that the presence of the gun was out of the ordinary for Defendants' business or intended to harass, intimidate or frighten Mr. Clarke.

In fact, Defendants have shown that no action was taken specifically with regard to Mr. Clarke's meeting. "Because of their very potency, inherent powers must be exercised with restraint and discretion." Id. at 44. This behavior is not of the type that requires the Court to exercise its inherent powers because there was no bad faith on Defendants' part. Whether it is a good business practice for Mr. Jamie Finkle to keep a gun, even a non-functioning one, on his desk in the office where he conducts business meetings is for Mr. Jamie Finkle to determine, not the Court.

### C. Plaintiffs Fail To Offer Sufficient Legal Analysis To Justify The Imposition Of Sanctions Pursuant To The Court's Inherent Power

Although Plaintiffs provided some citations to law as discussed above in support of their motion for sanctions, they failed to engage in adequate legal analysis or to set forth case law in their moving brief that would explain why the imposition of the sanctions they seek would be warranted.

Plaintiffs' submission "effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of [Plaintiffs'] counsel." Rotblut v. 300 E. 74th St. Owners Corp., 96 Civ. 5762 (JSM) (MHD), 1997 U.S. Dist. LEXIS 242, at *2 (S.D.N.Y. Jan. 16, 1997). Plaintiffs' failure to engage in legal analysis in their motion, alone, merits denial of

their motion. See Quinio v. Aala, 15 Civ. 4912 (PKC) (ST), 2016 U.S. Dist. LEXIS 59639, at *6-7 (E.D.N.Y. May 4, 2016) (noting that moving party's failure to engage in legal analysis or set forth case law authorizing the imposition of the sanctions sought "alone merits denial of plaintiff's motion"); Tylena M. v. Heartshare Human Servs., 02 Civ. 8401 (VM) (THK), 2004 U.S. Dist. LEXIS 10398, at *9 (S.D.N.Y. June 7, 2004) (denying motion for sanctions because the moving party failed to cite any legal authority in support of its application).

## III. CONCLUSION

For the reasons stated above, this Court denies Plaintiffs' motion for sanctions.

Dated: Brooklyn, New York
      February 8, 2016

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge