```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BILLY J. POTTS, BRIAN CLARKE, and         :
ALBERTO FLORENTINO,                       :
                                          :         REPORT AND
                        Plaintiffs,       :      RECOMMENDATION
                                          :
          - against -                     :      17 Civ. 2386 (ARR) (VMS)
                                          :
POSTAL TRUCKING COMPANY and               :
CLIFTON B. FINKLE,                        :
                                          :
                        Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Billy J. Potts, Brian Clarke and Alberto Florentino ("Plaintiffs") commenced this action against Defendants Postal Trucking Company and Clifton B. Finkle ("Defendants") bringing claims for damages arising from violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 650 et seq., and regulations promulgated thereunder. See ECF No. 12.[1] As relevant here, Defendants' answer brought a counterclaim against Mr. Florentino. See ECF No. 51. Defendants now move for an order enforcing a settlement agreement that they contend they reached with Mr. Clark and Mr. Florentino during a mediation. See ECF No. 84. Plaintiffs oppose. See ECF No. 87. Defendants reply. See ECF No. 86.[2] The Honorable Allyne R. Ross referred the motion for

---

[1] Although Plaintiff Billy J. Potts brought similar claims, Defendants' motion does not allege or seek to enforce a settlement with him.

[2] This Court notes that the parties failed to comply with repeated Orders warning them not to file motion papers with confidential settlement information on the public docket. See, e.g., Local Civil Rule 83.8(d); Dkt. Entry 10/15/2021; Dkt. Entry 12/3/2021. As a result, the Court sua sponte sealed the filings. See ECF Nos. 84, 86-87. On or before January 14, 2022, the parties must refile their submissions as exhibits to motions to seal and bearing proposed line redactions of confidential material highlighted in yellow. Upon this Court's resolution of the motions to seal, it will direct the parties to file them publicly with permitted redactions. It is the

1

disposition and, for the reasons stated below, this Court respectfully recommends that the District Judge deny Defendants' motion.[3]

## I. Factual Background

The facts discussed below are drawn from the parties' motion papers and the docket.

At the parties' request, the Court twice referred them to Court-annexed mediation and, in connection with those referrals, they were repeatedly directed that the Court's "Confidentiality Stipulation must be signed at the mediation session by all participants and the [m]ediator and returned" to the Court's Alternative Dispute Resolution department. Dkt. Entry 2/28/2020; 11/25/2020; see Dkt. Entry 10/11/2019; Dkt. Entry 9/12/2019. Paragraph 1 of the Confidentiality Stipulation contains a provision stating that "[n]o party shall be bound by anything said or done during the [m]ediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement." http://img.nyed.uscourts. gov/files/forms/Confidentiality%20Agreement.pdf (last accessed Dec. 29, 2021).

On June 14, 2021, the parties participated in person in the second of these mediations for over six hours. See Declaration of Defendants' Counsel John A. Ridley ("Ridley Decl.") ¶ 7,

---

responsibility of counsel to educate themselves regarding what may and may not be publicly filed. See, e.g., In re Teligent, Inc., 640 F.3d 53, 57 (2d Cir. 2011) ("Confidentiality is an important feature of the mediation and other alternative dispute resolution processes."); id. at 60 (affirming lower court's denial of motion to lift confidentiality provisions of protective orders).

[3] Under 28 U.S.C. § 636(b), district judges may designate magistrate judges to determine many types of matters, but certain disputes, including those that would be dispositive of a party's claims or defenses, may not be decided by a magistrate judge, absent consent of the parties. See 28 U.S.C. § 636(c). "Although the governing statute does not specifically list a motion to enforce a settlement as a type of motion that may not be decided by a magistrate judge without the parties' consent, see 28 U.S.C. § 636(c), the weight of authority in this Circuit is that such a motion should be characterized as either dispositive, or the functional equivalent of a dispositive motion[.]" Dannhauser v. TSG Reporting, Inc., No. 16 Civ. 747 (CM) (DF), 2019 WL 2950142, at *7 (S.D.N.Y. June 21, 2019) (collecting cases, citations & quotations omitted), R&R adopted, ECF No. 109 (S.D.N.Y. July 9, 2019).

2

ECF No. 84-2.[4]  Over the course of the day, the mediator kept the parties separate and held a series of back-and-forth conferences with each side.  See id. ¶ 8.  Defendants were willing to settle claims and counterclaims involving Mr. Florentino on the condition that at least one other Plaintiff agree to settle his claims against Defendants as well.  See id. ¶¶ 9-10.  At times the mediator also jointly met with counsel and, in one of those joint sessions, at approximately 4:00 p.m., the mediator and Plaintiffs' counsel informed Defendants' counsel that Mr. Florentino and Mr. Clarke would agree to settle pursuant to terms involving, among other things, Defendants' payment of a sum certain to Mr. Clarke in exchange for Mr. Clarke's release of claims and Defendants' and Mr. Florentino's mutual release of claims.  See id. ¶¶ 8, 14, 19.  Counsel also discussed the need for judicial approval of any settlement reached by the parties.  See id. ¶ 16.  The mediator and Defendants' counsel then met with Defendant Postal Trucking Company's owners (Defendant Clifton B. Finkel and non-party James Finkle) to review the proposed terms, and the owners agreed to them.  See id. ¶¶ 21-22.  The mediator and all counsel then met again to "discuss[] the mechanics of the settlement" but, by that time, Mr. Florentino had left for the day, and Mr. Clarke and Mr. Potts were anxious to leave and unwilling to stay longer.  See id. ¶¶ 23-26.  As a result, the mediator was unable to meet with Plaintiffs in person to review the proposed settlement terms which also sought to impose limitations upon non-settling Plaintiff Mr. Potts's potential right, in the event he became a prevailing party, to seek an award of his full attorney's fees and costs incurred in litigating his claims.  See id. ¶¶ 18, 23-26; Declaration of Plaintiff's

---

[4] The first mediation was unsuccessful and took place in 2019.  See Dkt. Entry 10/11/2019; Dkt. Entry 11/26/2019.  The second mediation's scheduling was delayed because of the COVID-19 pandemic as the parties sought an in-person proceeding that could only be arranged in the summer of 2021.  See, e.g., Dkt. Entry 2/28/2020; ECF No. 74; Dkt. Entry 3/26/2020; ECF No. 76; Dkt. Entry 8/11/2020; ECF No. 77; Dkt. Entry 10/14/2020; ECF No. 78; Dkt. Entry 11/19/2020; Dkt. Entry 11/25/2020; Dkt. Entry 11/30/2020; ECF No. 79; Dkt. Entry 1/11/2021; Dkt. Entry 3/11/2021; Dkt. Entry 3/29/2021; Dkt. Entry 5/26/2021.

Counsel Angelo R. Bisceglie, Jr. ("Bisceglie Decl.") ¶¶ 16, 20-23, ECF No. 87-1. No writing was prepared or signed to memorialize those terms that day. See Ridley Decl. ¶¶ 26-28; Bisceglie Decl. ¶ 24; ECF Nos. 84 at 1, 84-1 at 2 ¶ 4 (moving to enforce oral settlement agreement, arguing that "the settlement was not required to be written"). Instead, the mediator and counsel discussed that Defendants' counsel would prepare a writing to confirm its terms and to memorialize the settlement agreement for submission to the Court for approval under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 200 (2d Cir. 2015). See Ridley Decl. ¶¶ 26-28.

      Plaintiffs' counsel declares that during these discussions, he expressly reserved Plaintiffs' right not to be bound by the working agreement absent a writing that at a minimum acceptably finalized a term requiring, as a condition of settlement, that non-settling Plaintiff Mr. Potts would waive his right, in the event he became a prevailing party, to seek an award for two-thirds of Plaintiffs' attorney's fees and costs incurred in litigating the action as of the settlement date. See Bisceglie Decl. ¶¶ 20-23; Ridley Decl. ¶ 18. As the motion record does not indicate that Mr. Potts agreed to this term in writing or orally, it is Plaintiffs' position that neither an agreement nor an agreement to agree had been reached. See Bisceglie Decl. ¶ 23 ("Therefore, the parties did not agree to all terms of the oral settlement."). Plaintiffs' counsel declares that he told Defendants at the mediation that the "devil [would be] in the details" with respect to non-settling Plaintiff Mr. Potts's waiver of a possible claim for attorney's fees and costs. See id. ¶¶ 22-23. Given the length and breadth of this litigation, such a waiver would have had significant value to Defendants and would have been a major concession by Plaintiffs generally and Mr. Potts specifically. See Bisceglie Decl. ¶¶ 20-23; see also Ridley Decl. ¶ 19 (claiming that Mr. Florentino and Mr. Clarke had agreed to Mr. Potts's partial waiver of a right to fees and costs but not making a like representation about Mr. Potts). The record is silent not only as to whether Mr.

4

Potts agreed to the waiver, but it is silent as to what consideration, if any, Mr. Potts would have personally received in exchange.

According to Defendants' counsel, he "demurred" when asked to prepare the writing memorializing settlement terms because he had a funeral to attend the next day and had travel plans for about a week after that, but he does not deny that he undertook the drafting responsibility.  See Ridley Decl. ¶ 28.  Seven days later, while Defendants' counsel was still traveling, Plaintiffs' counsel emailed him stating that "on second thought my client, [Mr.] Clarke, has rejected the settlement offer."  Id. ¶ 30; Pl. Exh. A.  According to Plaintiff's counsel, he sent this email after learning from Mr. Clarke after the mediation that Mr. Clarke had misunderstood that Defendants' proposed financial payment would be his net recovery for his claims when, in fact, Defendants' proposal was that the proposed sum would be inclusive of Mr. Clarke's attorney's fees and costs.  See Bisceglie Decl. ¶¶ 11-13.  Once Mr. Clarke understood that the proposed financial payment would entail a much smaller net recovery, Mr. Clarke rejected the settlement offer.  See id.  Among other things, Plaintiffs' counsel suggests that Mr. Clarke's confusion regarding the proposed amount of his net recovery during the mediation was due to the mediator's lack of an opportunity to meet with Mr. Clarke in person at the close of proceedings, see id. ¶¶ 13, 16, 19; this timeline is consistent with Defendants' account that Plaintiffs had either left or were anxious to leave at the end of the day when the mediator otherwise would have reviewed the proposed agreement with Plaintiffs, see Ridley Decl. ¶¶ 23-28.

Defendants' counsel responded to Plaintiffs' counsel's email regarding Mr. Clarke that his clients would consider next steps but that "in the interim," the settlement between Defendants and Mr. Florentino "is not final and effective."  Ridley Decl. ¶ 31; Pl. Exh. A.

Defendants then commenced motion practice to enforce what they now allege was a binding oral settlement with Mr. Florentino and Mr. Clarke achieved during the mediation. See ECF Nos. 80-83. The Court scheduled the parties' briefing in Orders that twice specifically directed them to include in their submissions a copy of the above-mentioned confidentiality stipulation that the parties were directed to complete and sign in connection with their participation in Court-annexed mediation. See Dkt. Entry 10/15/2021 ("The parties' submissions should also include a copy of any mediation stipulation and agreement they signed in connection with their proceeding with [the mediator]."); Dkt. Entry 12/3/2021 ("The parties are reminded to comply with the Order dated 10/15/2021 regarding the filing of . . . material including the executed mediation stipulation pertaining to the proceedings with [the mediator]."). Defendants filed their instant motion to enforce the oral settlement. See ECF No. 84. Plaintiffs opposed. See ECF No. 87. Defendants replied. See ECF No. 86. Yet, the parties did not file the confidentiality stipulation with their papers or explain their failure to comply.

**II.     Analysis**

The Second Circuit in Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2d Cir. 1985), set forth a totality-of-the-circumstances test to determine whether an oral settlement agreement is enforceable. Under Winston, courts consider four factors, none of which is alone typically considered dispositive, i.e., (1) whether the agreement at issue is the type of contract that is usually committed to writing; (2) whether all of the terms of the alleged contract have been agreed upon; (3) whether there has been an express reservation of the right not to be bound in the absence of a writing; and (4) whether there has been partial performance of the contract. See Winston, 777 F.2d at 80. "The party seeking to enforce a purported settlement agreement bears the burden of providing that such a binding and enforceable agreement exists." Grgurev v.

Licul, No. 15 Civ. 9805 (GHW), 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016) (citing Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc., 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006)). Although it is an open question whether federal or state law controls the enforceability of an oral settlement contract in federal court, the Second Circuit has said that the question has no practical significance because "New York law and federal common law [a]re materially indistinguishable." Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007) (citing Monaghan v. SZS 33 Assocs., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996) ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule.")).

### a. Agreement Usually Committed To Writing

"[S]ettlements of . . . FLSA claims" such as the one alleged here "are of the type typically committed to writing, because they require judicial approval" under governing Second Circuit case law. Velazquez v. Yoh Servs., LLC, No. 17 Civ. 842 (CM), 2017 WL 4404470, at *3 (S.D.N.Y. Sept. 25, 2017) (citing Cheeks, 796 F.3d at 206); see Mora v. Bareburger Grp. LLC, No. 16 Civ. 4373 (RML), 2020 WL 5369051, at *2 (E.D.N.Y. Sept. 8, 2020) ("Ultimately dispositive [of the denied settlement enforcement motion] is the type of settlement agreement at issue here: an FLSA settlement agreement."); Scalia v. Agave Elmwood Inc., 458 F. Supp. 3d 161, 171 (W.D.N.Y. 2020) (collecting cases for the proposition that "[a]greements to settle FLSA claims are typically committed to writing"); Junjiang Ji v. Jling, Inc., No. 15 Civ. 4194 (SIL), 2019 WL 1441130, at *12 (E.D.N.Y. Mar. 31, 2019) (finding that "agreements to settle FLSA claims are virtually always memorialized in writing" due to required Cheeks review) (citations omitted), appeal dismissed, 799 F. App'x 88 (2d Cir. 2020); Alvarado v. Given Town Car Wash, Inc., No. 13 Civ. 1672 (RJD) (JO), 2014 WL 252015, at *2 (E.D.N.Y. Jan. 22, 2014) (adopting report and recommendation finding that "written agreements are the norm when parties

seek to settle claims under the FLSA"). In light of the Cheeks requirement that either the Court or the Department of Labor ("DOL") approve any final settlement agreement, "all parties here necessarily contemplated that a written agreement would be drafted, executed and approved by the Court." Junjiang Ji, 2019 WL 1441130, at *12. Because the Court requires parties to submit their settlements in writing for Cheeks approval together with a joint letter motion, "[t]hat could not possibly happen here." Velazquez, 2017 WL 4404470, at *3. On similar facts, courts in this Circuit have declined to enforce alleged FLSA settlements in the absence of a written agreement that permits meaningful judicial review and approval. See, e.g., Mora, 2020 WL 5369051, at *3 (denying the plaintiffs' motion to enforce an alleged FLSA settlement in the absence of a written agreement enabling Cheeks review); Scalia, 458 F. Supp. 3d at 171 (finding, "as have other courts, [this Winston] factor particularly dispositive of the pending motion" to enforce a settlement agreement such that its denial was required); Junjiang Ji, 2019 WL 1441130, at *12 (finding the usually-committed-to-writing Winston factor dispositive and requiring the denial of the defendants' motion to enforce FLSA settlement because the defendants "implicitly acknowledged that a written agreement would be drafted, executed and approved by the [c]ourt" under Second Circuit precedent, but "no final written agreement [had been] consummated"); Velazquez, 2017 WL 4404470, at *4 (denying the defendants' motion to enforce oral FLSA settlement agreement, noting that to hold otherwise would be "contrary to the FLSA policy of protecting plaintiffs"); Lin v. Grand Sichuan 74 St. Inc., No. 15 Civ. 2950 (RA) (KNF), 2016 WL 5497837, at *1 (S.D.N.Y. June 23, 2016) (denying the defendants' motion to enforce a disputed FLSA settlement agreement, citing the defendants' concession that "no stipulated settlement agreement resolving the instant action was ever presented to the court" or the DOL).

In addition, the agreement to conclude a case in this District is also the type of contract usually committed to writing pursuant to the protocols of this District's Court-annexed mediation program. As discussed above, the parties were directed to participate in the mediation pursuant to the terms of the confidentiality stipulation providing that "[n]o party shall be bound by anything said or done during the [m]ediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement." Confidentiality Form, https://img.nyed.uscourts. gov/files/forms/ Confidentiality%20Agreement.pdf (last accessed Dec. 29, 2021).[5]

For the foregoing reasons, the Winston factor pertaining to whether the alleged settlement is of the type usually committed to writing weighs heavily against granting Defendants' motion.

### b. Agreement On All Material Terms

Where the parties failed to agree on a material term of a purported oral contract, it is relevant to the existence of a binding settlement agreement. See Forden v. Bristol Myers Squibb,

---

[5] This Court additionally observes that settlement agreements are usually committed to writing under Section 2104 of New York's Civil Practice Law and Rules unless they are "made between counsel in open court[.]" N.Y. C.P.L.R. § 2104 (providing that "[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered"); see Monaghan, 73 F.3d at 1283 n.3 ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule."). Defendants have also not shown that the alleged oral agreement made at the mediation was thereby made in open court. See Aberra v. City of New York, No. 18 Civ. 1138 (LAK) (SLC), 2020 WL 11772386, at *10 (S.D.N.Y. July 31, 2020) (finding that the movant could not make an argument that an oral argument was made in open court without "documentation or corroboration of the terms discussed between [the parties]"), R&R adopted, 2020 WL 11772387 (S.D.N.Y. Aug. 24, 2020); Bartley v. Federal Exp. Corp., Inc., 683 N.Y.S.2d 737, 739 (N.Y. Sup. Ct. Queens Cnty. Dec. 10, 1998) ("An informal mediation conference is not the equivalent of a 'court convened' 'in an institutional sense'") (quoting In re Dolgin Eldert Corp., 31 N.Y.2d 1, 405 (N.Y. 1972)); but see Lee v. Hosp. for Special Surgery, No. 09 Civ. 1117 (LAK), 2009 WL 2447700, at *3 (S.D.N.Y. Aug. 11, 2009) (holding that a settlement reached at a mediation "in circumstances in which no one present has disputes either the making of the settlement or its terms" may satisfy Section 2104).

63 F. App'x 14, 16 (2d Cir. 2003) ("We conclude that the district court correctly considered relevant factors and find no error in its conclusion that the parties had failed to agree on a material term of the contract and, consequently, that no binding settlement agreement existed."). "[T]he existence of even 'minor' or 'technical' points of disagreement" in allegedly binding oral settlement agreements have been held to be "sufficient to forestall the conclusion that a final agreement on all terms had been reached." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 325 (2d Cir. 1997) (quoting Winston, 777 F.2d at 82-83).

First, as discussed both above and below, the parties failed to reach agreement as to the material term of whether non-settling Plaintiff Mr. Potts agreed to partial waiver of a potential right to an award of attorney's fees. See Section I, supra; Section II.c, infra; Velazquez, 2017 WL 440470, at *3 (finding that the parties' oral agreement "merely agreed to the broad terms of a settlement without deciding how those terms would be implemented" including, inter alia, the fact that the plaintiff's attorney "evinced an intent to further negotiate the details of the written agreement").

Second, the core of the alleged oral agreement in this case was a fairly basic one—the dismissal of Mr. Clarke's lawsuit in exchange for a particular monetary payment and the mutual dismissal of claims and counterclaims involving Mr. Florentino. See Ridley Decl., passim. Yet, it is clear from Plaintiffs' papers that Mr. Clarke did not understand the mechanics of even this proposed part of the settlement, i.e., that Defendants' proposed monetary payment would not be his net recovery. Nothing in the record shows that Mr. Clarke stated his assent to the lower amount as a net recovery during the mediation. Thus, Mr. Clarke cannot be said to have agreed to accept a lesser net recovery in exchange for his release of claims. See Chavis v. LSG Sky Chefs, No. 04 Civ. 469 (ARR) (LB), 2005 WL 81600007, at *4 (E.D.N.Y. Aug. 9, 2005)

(finding relevant to the open-terms Winston factor that it was clear from the plaintiff's statements that he "did not understand all of the terms that had been discussed" at a settlement conference because the plaintiff remembered them differently from how they appeared in a written contract later generated). Defendants do not present any objective evidence to contradict Mr. Clarke's claimed misunderstanding that Defendants proposed that the settlement payment offered was intended to be his net recovery. The record does not contradict that Mr. Clarke's misunderstanding was genuine because neither the mediator nor Plaintiffs' counsel met with the three Plaintiffs or even just Mr. Clarke at the end of the mediation to review their comprehension of the proposed final settlement's mechanics. See Min v. Target Stores, 553 F. Supp. 2d 218, 222 (E.D.N.Y. 2008) (noting that "the absence of any recording or transcription of the . . . settlement conference deprives this Court of the ability to examine the nature of [the plaintiff's contested] assent" and holding that "[s]ince [the d]efendant has offered insufficient evidence to dispute [the plaintiff's] claims regarding her . . . understanding of the proceedings, there is insufficient evidence of an enforceable agreement") (adopting report and recommendation to deny motion to enforce oral settlement).[6]

---

[6] Defendants argue that they are entitled to take Mr. Clarke's testimony regarding his understandings about his net recovery at an evidentiary hearing. See ECF No. 86 at 2 n.3. This Court disagrees because Defendants have not offered any evidence to contradict Mr. Clarke's statement. Assuming arguendo that Defendants had presented or could elicit evidence that Mr. Clarke understood that Defendants' proposed financial payment would be inclusive of attorney's fees and costs, this Court would still find the alleged oral settlement unenforceable based on the totality of other facts and Winston factors. See Tri-County Motors, Inc. v. Am. Suzuki Motor Corp., 494 F. Supp. 2d 161, 173 (E.D.N.Y. 2007) (finding that whether based on one Winston factor or the totality of all four, "there is no triable issue—it is clear beyond cavil from the unchallenged evidence that [the parties] never entered into a binding [agreement]").

Defendants' counsel's statement in response to news of Mr. Clarke's misunderstanding that the agreement was not "final and effective" pending next steps is arguably confirmation that the parties did not believe they had a final binding agreement. See Section II.d, infra.

In light of the foregoing, the Winston factor pertaining to whether the parties reached agreement on all material terms weighs against granting Defendants' motion.

### c.  Reservation Not To Be Bound

The Winston factor pertaining to an express reservation of the right not to be bound absent a writing is an important one. See Westwide Winery, Inc. v. SMT Acquisitions, LLC, 511 F. Supp. 3d 256, 261 (E.D.N.Y. 2021). "This makes sense: since the ultimate question is whether the parties intended to be bound," and an express reservation of their right not to be bound is difficult to rebut. Hallett v. Stuart Dean Co., 481 F. Supp. 3d 294, 302 (S.D.N.Y. 2020). "The intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances." Ciaramella, 131 F.3d at 325 (citation omitted).

As a preliminary matter, this Court notes that the parties were directed to execute the confidentiality stipulation in connection with their participation in the Court-annexed mediation at issue, with Paragraph 1 of that standard stipulation stating that "[n]o party shall be bound by anything said or done during the [m]ediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement." Confidentiality Form, https://img.nyed.uscourts.gov/files/forms/Confidentiality%20 Agreement.pdf (last accessed Dec. 29, 2021). Whether the parties complied with the directive is unknown in light of their non-compliance with the Court's Orders to include it with their motion submissions and their failure to explain why. See Dkt. Entry 10/15/2021; Dkt. Entry 12/3/2021. Although the requirement that the parties would reduce any agreement reached in Court-annexed mediation to writing for it

12

to be binding is relevant to the instant motion, this Court's analysis and recommendations do not rely on this fact as dispositive.

As to Plaintiffs' counsel's express reservation of Plaintiffs' right not to be bound absent a writing, it is significant that he said the "devil [would be] in the details" of any written agreement produced by Defendants for the parties' proposed execution. See Lindner v. Am. Express Corp., No. 06 Civ. 3834 (JGK), 2007 WL 1623119, at *6 (S.D.N.Y. June 5, 2007) ("Although this factor is phrased in terms of 'express' reservations, courts . . . also analyze whether the particular facts and circumstances of the case . . . demonstrate an implied reservation of the right not to be bound until the execution of a written agreement."). A key settlement point not yet agreed-upon but requested by Defendants was that, in the event non-settling Plaintiff Mr. Potts became a prevailing party, Mr. Potts would be precluded from seeking an award of more than one-third of the attorney's fees and costs incurred in the litigation of the action as of the settlement date. See Ray Legal Consulting Grp. v. DiJoseph, No. 13 Civ. 6867 (KPF), 2016 WL 1451547, at *8 (S.D.N.Y. Apr. 12, 2016) (holding that courts should not "retroactively decide that certain changes to an agreement were so minor as to be of no import to an agreement's binding effect") (citations & quotations omitted); Johnson v. Fordham Univ., No. 11 Civ. 4670 (ALC) (MHD), 2015 WL 13745785, at *4 (S.D.N.Y. Sept. 24, 2015) (holding that a court may look to whether litigants had an implied assumption that an agreement was contingent on a negotiated written contract, and finding such a reservation plainly understood because key details were left unaddressed), R&R adopted, 2016 WL 450424, at *3 (S.D.N.Y. Feb. 4, 2016). Mr. Potts's consent to such a waiver would have been necessary for the agreement to be finalized, yet the record does not show that he did agree to it. As noted above, this element of the proposed agreement likely represented a significant amount of money given the attorney's fees likely

13

accrued to date. Thus, it was a material term of the agreement that was not finalized. See Emamian v. Rockefeller Univ., No. 07 Civ. 3919 (PGG) (MHD), 2021 WL 5358589, at *1 (S.D.N.Y. Sept. 30, 2021) (collecting cases holding that the right to seek such fees and costs awards belong to prevailing-party plaintiffs and not their attorneys); Spencer Trask Secs., Inc. v. FinancialWeb.Com, Inc., No. 99 Civ. 9197 (RCC), 2000 WL 1239101, at *2 (S.D.N.Y. Aug. 31, 2000) (finding that even where the parties had agreed on major terms, there was an express reservation of the right not to be bound in the absence of the executed settlement agreement where the parties "clearly contemplated the possibility of further negotiation").

In addition, Defendants emphasize that Mr. Florentino had left and Mr. Clarke was ready to leave the mediation at the time the parties terminated the proceeding without a written agreement. Although Defendants' intended point may be to explain why they failed to procure a writing, this aspect of the record reinforces that the parties could not do so, i.e., neither the mediator nor Plaintiffs' counsel was able to met with all Plaintiffs to explain and obtain their consent to the agreement, nor did they agree to a memorandum of understanding or other summary document.

From the totality of the foregoing circumstances, this Court finds that Plaintiffs did not consent to a final agreement and, in any event, reserved their right not to be bound to the alleged agreement absent a writing. This Winston factor weighs against granting Defendants' motion.

### d. Partial Performance

"Partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts the performance signals, by that act, that it also understands a contract to be in effect." Goldstein v. Solucorp Indus., Ltd., No. 11 Civ. 6227 (VB) (PED), 2017 WL 1078739, at *8 (S.D.N.Y. Feb. 10, 2017) (quoting R.G. Grp., Inc. v. Horn & Hardart Co., 751

14

F.2d 69, 75-76 (2d Cir. 1984)). "When analyzing partial performance, courts look to whether any of the terms agreed to in settlement discussions have been performed." Solucorp, 2017 WL 1078739, at *8.

Although Defendants say that they have partially performed the settlement because they have "ceased pursuing the counterclaim against [Mr.] Florentino[,]" this is only because the parties have been litigating Defendants' instant motion, not because Defendants have dismissed their counterclaim. ECF No. 84-1 § 1.B; In re Lehman Brothers Holdings Inc., No. 17 Civ. 3424 (DLC), 2017 WL 3278933, at *2 (S.D.N.Y. Aug. 2, 2017) (finding partial performance factor to weigh against settlement enforceability where "[t]he benefits of the agreement were a release from litigation in exchange for a payment[,]" and "[n]o money has been paid and no releases have been signed"). The parties have completed discovery and submitted a first Joint Proposed Pretrial Order. See ECF No. 67. On December 29, 2021, the Court granted the parties' joint request to extend their December 22, 2021, deadline to file a revised Joint Proposed Pretrial Order after the resolution of the instant motion.[7] See Dkt. Entry 12/29/2021. That Defendants have unilaterally sought to end the litigation does not actually conclude it.

Defendants further state that their "only other obligation under the oral settlement was to pay the settlement amount to [Mr.] Clarke[,]" yet admit that they have not made that payment due to the parties' instant dispute. ECF No. 84-1 § 1.B. On similar facts courts have rejected a claim of partial performance. See Ciaramella, 131 F.3d at 325 (reversing an order granting an oral settlement enforcement motion after finding, inter alia, that "[n]o evidence of partial performance of the settlement agreement" existed where the defendant had "paid no money to

---

[7] Instead, the parties filed a joint motion that day to enlarge their time to file the Joint Proposed Pretrial Order. The Court granted the joint request and directed the parties to file their Joint Proposed Pretrial Order within thirty (30) days of the resolution of the instant motion.

15

[the plaintiff] before the district court ordered the settlement enforced"); Nieves v. Community Choice Health Plan of Westchester, Inc., No. 08 Civ. 321 (VB) (PED), 2011 WL 5531018, at *4 (S.D.N.Y. Nov. 14, 2011) ("According to the draft agreement, performance by defendants consists only of making a payment to plaintiffs. No payment was made. There has been no meaningful act by any of the defendants indicating a partial performance of the agreement."); Edwards v. City of New York, No. 08 Civ. 2199 (FB) (JO), 2009 WL 2601311, at *4 (E.D.N.Y. Aug. 21, 2009) ("[T]he only meaningful act the [defendant] had to perform was to issue a payment to [the plaintiff], which has not occurred. As a result, the second Winston factor cuts against enforcing the oral agreement."); Chavis, 2005 WL 81600007, at *4 (finding that no evidence of partial performance existed where the defendant paid no money to the plaintiff following the purported oral agreement: "Clearly [the] defendant . . . did not believe itself required to perform its obligations absent an executed written agreement."); cf. Waite v. Schoenbach, No. 10 Civ. 3439 (RMB) (JLC), 2011 WL 3425547, at *7 (S.D.N.Y. Aug. 5, 2011) (finding that the defendants' non-payment of settlement funds did not "tip the balance" on the partial-performance factor given that the plaintiff sought to vacate agreement), R&R adopted, 2011 WL 6326115 (S.D.N.Y. Dec. 16, 2011).

The total absence of any partial performance on Plaintiffs' claims suggests there was no meeting of the minds as to a binding settlement, and this Winston factor weighs against granting Defendants' motion.

### III. Conclusion

In summary, because all of the Winston factors weigh against a finding that the parties had a binding oral settlement contract, this Court respectfully recommends that the District Judge deny Defendants' motion to enforce the alleged settlement. See ECF No. 84.

### IV. Objections

A copy of this report and recommendation is being provided to the Parties via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

\* \* \* \* \*

Although the parties did not reach a final settlement, because they clearly made significant progress in their mediation negotiations, they are encouraged to reinvigorate their discussions with the assistance of the mediator, in accordance with the Court's mediation procedures. They should consider a remote negotiation if COVID protocols make an in-person proceeding difficult.

Dated: Brooklyn, New York
December 30, 2021

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge